UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JAWON DICKEY, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 3:17-cv-412 |
| ) | Judge Phillips |
| KNOXVILLE POLICE DEP'T, and ) | |
| TRAVIS BAKER, ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION**

This matter is before the Court on Defendant Travis Baker's Motion for Summary Judgment [doc. 23]. After the Court granted a motion to defer ruling pending limited discovery [doc. 36], Plaintiff has now responded [doc. 39], and Defendant Baker has replied [doc. 40]. For the reasons stated below, Defendant Baker's Motion for Summary Judgment [doc. 23] will be denied.

**I.  Relevant Facts**

In 2017, Plaintiff initiated this action by filing a *pro se* complaint, naming the Knoxville Police Department ("KPD") and Officer Baker as defendants. [Doc. 2]. Plaintiff used a form complaint for civil rights violations, under 42 U.S.C. § 1983. [*Id*.]. In describing the facts of his case, Plaintiff stated: "Officer Baker grabbed me. He was called about someone else blocks away that wasn't me. I got off my bus and was on my way home. He beat me and knocked out my front tooth. Its [sic] on video. He punched me in the face 3-4 times." [*Id*. at 3-4]. Under the section for requesting relief, Plaintiff stated "Im [sic] poor and need dental care, he knocked my tooth out and all I was doing was

walking home." [*Id.* at 5]. Thereafter, Plaintiff obtained counsel, who entered an appearance on Plaintiff's behalf. [Doc. 7]. The Court later dismissed Plaintiff's claims against the KPD. [Doc. 19].

On the night of December 26, 2016, at around 9:47 p.m., Officer Baker, who was a patrol officer with the KPD, received a dispatch call regarding a report of a suspicious person walking down an alley and shining a flashlight. [Doc. 23-1 at 1; Doc. 39-2 at 6]. The report from the 911 call received that night indicates that the caller advised that a suspicious black male, wearing jeans, a white shirt, and white shoes was in an alley with a flashlight. [Doc. 39-4 at 2].

Officer Baker responded at approximately 10:35 p.m., and observed Plaintiff walking in front of the Pizza Palace on East Magnolia Avenue, which is located a short distance from where the initial 911 call was made. [Doc. 23-1 at 1-2]. When Officer Baker first spotted Plaintiff, he was in a back alley, "not walking in a purposeful direction." [Doc. 39-3 at 10]. Officer Baker then pulled his cruiser around to the parking lot of Pizza Palace to confront Plaintiff. [*Id.* at 9-10]. When Officer Baker pulled into the Pizza Palace parking lot, he did not turn on the lights or sirens on his police cruiser. [*Id.* at 11]. Upon Officer Baker approaching him, Plaintiff was immediately non-compliant with Officer Baker's verbal commands. [Doc. 23-1 at 2]. Plaintiff was not under arrest, but he was being detained because Officer Baker believed he had reasonable suspicion that Plaintiff was an individual surveying closed businesses. [Doc. 39-3 at 16]. However, Officer Baker did not tell Plaintiff this information, and did not recall ever telling Plaintiff why he was being questioned. [*Id.*]. Officer Baker asserts that, during their interaction, Plaintiff was

2

putting his hands in his pockets, and Officer Baker became concerned whether Plaintiff had a weapon. [Doc. 23-1 at 2; Doc. 39-3 at 17]. At some point, Officer Baker began telling Plaintiff to "get on the ground," because Plaintiff was allegedly imposing himself on Officer Baker's personal space, which made Officer Baker nervous. [Doc. 39-3 at 19]. Officer Baker also withdrew his taser and repeatedly threatened to "pop" Plaintiff, by which he meant using his taser. [*Id*. at 20]. Officer Baker stated that he retrieved his taser in response to the imminent physical threat from Plaintiff. Officer Baker admitted that he never even asked Plaintiff for his name, asserting that he never had a chance. [*Id*.]. Officer Baker stated that he would have explained the situation better to Plaintiff if he had a chance to without Plaintiff being physically imposing and verbally aggressive. [*Id*. at 22-23].

Because Plaintiff was noncompliant with his commands, Officer Baker called for backup. [Doc. 23-1 at 4]. Officer Roger Simmons received the request for backup around 10:38 p.m., and concluded, from Officer Baker's tone of voice, that he was encountering a tense and rapidly-developing situation that required immediate assistance. [Doc. 23-2 at 1]. Upon Officer Simmons' arrival, he exited his police cruiser and told Plaintiff "you better f***ing listen to him, dude." [Doc. 39-3 at 29-30]. Officer Simmons and Officer Baker then immediately attempted to take control of Plaintiff's hands. [Doc. 23-1 at 4; Doc. 23-2 at 2]. Officer Baker asserts that he still had no chance to tell Plaintiff that he was being detained at this point. [Doc. 39-3 at 31]. According to Officers Baker and Simmons, Plaintiff forcefully resisted being detained, including: (1) refusing to put his hands behind his back; (2) attempting to pull away from the officers; and (3) swinging at Officer Baker twice with a closed fist, the first of which struck Officer Baker in the right

3

jaw. [Doc. 23-1 at 4; Doc. 23-2 at 2; Doc. 39-5 at 3]. Officer Baker stated that Plaintiff struck him in the face with his left hand, and Officer Baker had a red mark on his chin from the strike. [Doc. 39-3 at 37]. In response, Officer Baker struck Plaintiff with a closed fist approximately five to six times in the face until Plaintiff fell to the ground and was neutralized. [Doc. 23-1 at 4; Doc. 23-2 at 2; Doc. 39-5 at 3]. Thereafter, the officers took Plaintiff into custody and charged him with resisting arrest and disorderly conduct. [Doc. 23-1 at 4; Doc. 23-2 at 2].

Prior to his encounter with Officer Baker, Plaintiff had stayed at his home, which he shared with his mother and younger siblings, most of the day, which was the day after Christmas. [Doc. 39-2 at 12-14, 16]. Around 7:00 or 8:00 p.m., Plaintiff left to go to the Wal-Mart at University Commons. [*Id*. at 12-13]. Plaintiff was wearing a white shirt, black jacket, white below-the-knee shorts, and light gray tennis shoes. [*Id*. at 28-29]. Plaintiff took the bus from the bus stop near his house to the Wal-Mart. [*Id*. at 17-18]. Plaintiff was looking for a specific charger for his phone, but could not find it at the Wal-Mart. [*Id*. at 17]. Plaintiff then took the bus home, and got off the bus on Magnolia Avenue at the stop just past the Pilot, in front of a tobacco store. [*Id*. at 18-19]. Plaintiff was carrying a plastic bag. [*Id*. at 19]. Plaintiff intended to walk directly home, which was a 15- or 20-minute walk from the bus stop. [*Id*.]. Before walking home, however, Plaintiff stopped in the alley (which he generally walks through to go home from the bus stop) to call his mother and tell her that he was on his way home. [*Id*. at 20]. At that point, he was approached by Officer Baker in his police cruiser. [*Id*.]. Plaintiff states that Officer Baker indicated that he wanted Plaintiff to come over to his cruiser "I guess so he could, you

4

know, talk to me, search me, whatever," but Plaintiff felt harassed and did not think Officer Baker should have stopped him. [*Id.* at 20-21]. Plaintiff also states that he felt threatened and scared because he did not know what Officer Baker was going to do. [*Id.* at 21]. Plaintiff further states that he felt that it was "not right" that Officer Baker never told him why he was being detained. [*Id.* at 22]. Plaintiff admits that he never permitted Officer Baker to pat him down, but states that he did not resist efforts to be handcuffed and did not strike, or try to strike, Officer Baker. [*Id.* at 23-24]. Plaintiff reiterates that he did not hit Officer Baker in the face, or anywhere else. [*Id.* at 24]. Plaintiff states that he did not obey Officer Baker's verbal commands because he was scared and felt threatened. [*Id.* at 26]. Plaintiff admits that he ultimately pled guilty to disorderly conduct. [Doc. 39-2 at 28; Doc. 40-1 at 1].

## II.   Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Moore v. Phillip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). "Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis*

*Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## III. Analysis

Officer Baker asserts that he is entitled to qualified immunity as to Plaintiff's excessive force claim, asserting that the force he used during Plaintiff's arrest was objectively reasonable, in response to the immediate threat posed by Plaintiff. [Doc. 24 at 8-12]. Officer Baker asserts that he used only the force necessary to subdue Plaintiff. [*Id.* at 12]. Officer Baker also contends that the dashcam video evidence proves that Plaintiff punched, and attempted to punch, Officer Baker, and therefore, in construing the facts in

the light most favorable to Plaintiff, the Court should discount any assertion that Plaintiff did not strike, or attempt to strike, Officer Baker. [*Id*. at 9-10]. Officer Baker further asserts that Plaintiff's rights against the force used were not clearly established at the time of his arrest. [*Id*. at 13-14].

Plaintiff responds that, under the objective reasonableness standard, Officer Baker violated Plaintiff's right to be free from excessive force. [Doc. 39 at 17]. Plaintiff highlights that he was, at the most, suspected of trespassing, which is neither a violent nor a serious offense. [*Id*. at 18]. Second, Plaintiff asserts that he posed no real or serious threat to Officer Baker's safety, and a reasonable jury could conclude that Plaintiff merely exhibited a passive showing of resistance. [*Id*. at 18-20]. Plaintiff contends that Officer Baker was only justified in using the amount of force that a reasonable officer could have believed was needed to end his passive resistance, which did not include grabbing him and punching him repeatedly in the face with enough force to knock out his front teeth. [*Id*. at 20]. Plaintiff also contends that Officer Baker failed to consider less intrusive options, and lists several courses of action Officer Baker could have taken instead. [*Id*. at 22-23]. Moreover, Plaintiff contends that the Sixth Circuit has recognized that the right to be free of excessive force, as a general matter, is clearly established. [*Id*. at 25-27].

Officer Baker replies that Plaintiff's arguments and deposition testimony are blatantly contradicted by the video footage, and thus, do not give rise to a genuine issue of material fact. [Doc. 40 at 2]. Officer Baker further argues that, regardless of the Court's interpretation of the video footage, the sworn testimony in the affidavit of complaint, on which Plaintiff's disorderly conduct charge was based included specific reference to

fighting, and thus, no reasonable jury could find that Plaintiff did not attempt to strike Officer Baker. [*Id*. at 3-4].

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation[,]" and is "an *immunity from suit* rather than a mere defense to liability[.]" *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). Thus, "like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id*. To determine whether a government official is entitled to qualified immunity, the court must determine: (1) whether the plaintiff has shown the violation of a constitutional right; and (2) whether the right was clearly established at the time. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).[1] There is no requirement that this inquiry be performed in sequence, *id.*, and if a plaintiff fails to establish any one element, the defendant's request for qualified immunity must be granted. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005).

1. **Violation of a Constitutional Right**

The Supreme Court has held that a claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other "seizure" of

---

[1]The Sixth Circuit describes the qualified immunity test as a three-step inquiry: (1) whether the facts viewed in the light most favorable to the plaintiff show that a constitutional violation has occurred; (2) whether the violation involved a clearly established right of which a reasonable person would have known; and (3) whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Meals v. City of Memphis*, 493 F.3d 720, 729 (6th Cir. 2007) (quoting *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)). The Sixth Circuit has opined that this "three-step approach correctly encompasses the Supreme Court's [two-step] approach to qualified immunity claims and serves to ensure government officials the proper protection from civil suit under the law." *Meals*, 493 F.3d at 729, n.7.

the person is properly analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). Under the "objective reasonableness" standard, a court analyzes whether "the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. Reasonableness is determined by "balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (internal quotation marks and citations omitted).

Three non-exclusive factors should be examined in making this determination: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight ("the *Graham* factors"). *Graham*, 490 U.S. at 396. These factors are evaluated from the perspective of a reasonable officer on the scene, "rather than with the 20/20 vision of hindsight." *Id*. Additionally, these factors are not an exhaustive list, and a court's ultimate inquiry should be "whether the totality of the circumstances justifies a particular sort of seizure." *Id*. The circumstances should be evaluated at the moment force is employed. *See Bouggess v. Mattingly*, 482 F.3d 886, 889 (6th Cir. 2007) (stating that the reasonableness of the use of force at a particular time is based on an "objective assessment of the danger a suspect poses at that moment"). Courts should account for "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the

amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397. The *Graham* standard is intended to contain "a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002).

When making an arrest, "the government has the right to use some degree of physical coercion or threat thereof to effect it." *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001) (internal quotation marks omitted). The government also has the right to use force when a person is actively resisting arrest. *Rudlaff v. Gillispie*, 791 F.3d 638, 641 (6th Cir. 2015).

As an initial matter, a key disputed fact in this case is whether Plaintiff punched and/or attempted to punch Officer Baker, prior to Officer Baker's use of force. Officer Baker contends that Plaintiff punched him, while Plaintiff contends that he never punched, or even attempted to punch, Officer Baker, but instead, was flailing his arms after Officers Baker and Simmons put their hands on him. Officer Baker asserts that the truth of this matter is resolved by the dashcam video evidence. The Court disagrees. The Court has reviewed both the Baker dashcam video and the Simmons dashcam video, and neither clearly show that Plaintiff punched, or attempted to punch, either of the officers. These videos show that Officers Simmons and Baker grabbed Plaintiff, immediately after Officer Simmons's arrival on the scene, and Plaintiff then struggled to get out of the officers' grasp. The video does not clarify, however, whether Plaintiff actually punched Officer Baker, or merely flung his arms around while attempting to escape from the officers' grasp. Accordingly, the Court finds that a genuine issue of material fact exists as to whether

Plaintiff punched, or attempted to punch, Officer Baker during the course of the investigatory stop. Construing the evidence in the light most favorable to Plaintiff, as the Court must, the Court will address the question of whether or not Officer Baker is entitled to qualified immunity, assuming that Plaintiff merely flung his arms around while attempting to get out of Officer Baker's grasp.[2]

Viewing the facts in the light most favorable to Plaintiff, a genuine issue of material fact exists as to whether Defendant Baker's use-of-force was objectively reasonable in light of the surrounding circumstances. Looking to the *Graham* factors, by his own admission, the only offense Defendant Baker suspected Plaintiff of committing was trespassing [doc. 39-3 at 21], which is not a particularly serious offense. *See Bolden v. City of Euclid*, 595 F. App'x 464, 470 (6th Cir. 2014) ("It cannot be disputed that criminal trespassing is a relatively minor offense").

Second, although Defendant Baker asserts that he believed that Plaintiff posed an immediate threat to his safety, based on his failure to obey commands after Defendant

---

[2] The Court also finds Officer Baker's argument regarding the affidavit of complaint for the charge of disorderly conduct, to which Plaintiff pleaded guilty, uncompelling. Although the affidavit of complaint states that Plaintiff punched Officer Baker, the affidavit of complaint also states several clearly incorrect facts, based on the Court's review of the dashcam video in this case. For example, Officer Simmons states, in the affidavit of complaint, that Plaintiff was cursing at the officers. However, the video confirms that Plaintiff never cursed at the officers. To the contrary, Officer Simmons was the one cursing at Plaintiff upon his arrival. Additionally, the affidavit of complaint states that Plaintiff refused to provide his ID to the officers, however, Plaintiff can clearly be heard in the dashcam video spontaneously offering up his ID to Officer Baker [Baker Video at 22:37:03], complying when being asked for his ID [Baker Video at 22:37:30], and later asking Officer Baker no less than four times to return his ID [Baker Video at 22:38:13]. In light of these blatant inconsistencies, it would be the height of injustice for the Court to find that Plaintiff is precluded from asserting that he did not attempt to punch Officer Baker based on the affidavit of complaint.

Baker approached, a genuine issue of material fact exists as to whether Defendant Baker's assessment of Plaintiff's continued threat was objectively reasonable. Again, viewing the facts in the light most favorable to Plaintiff, at most, Plaintiff refused to obey Officer Baker's commands to allow a pat-down search or get on the ground, and then flailed his arms around when Officers Baker and Simmons grabbed him. In light of Plaintiff's admitted arm-flailing, Officer Baker may have been justified in concluding that Plaintiff posed a threat, and using some force against Plaintiff. However, after Officer Baker first punched Plaintiff, there is no allegation that Plaintiff continued to flail his arms, or resist Officer Baker in any way, thus giving rise to the need for Officer Baker to continue punching Plaintiff until he fell to the ground, screaming in pain. Accordingly, the Court finds that there is a genuine issue of material fact as to whether Plaintiff posed an immediate threat to Officer Baker's safety after the first use of force.

Finally, the reasonableness of an officer's use of force often turns on the third *Graham* factor: active resistance. *Kent v. Oakland Cnty.*, 810 F.3d 384, 392 (6th Cir. 2016). "Active resistance includes physically struggling with, threatening, or disobeying officers." *Rudlaff*, 791 F.3d at 641 (internal quotation marks omitted). Active resistance also includes refusing to move your hands for the police to handcuff you or fleeing from police. *Kent*, 810 F.3d at 392. Defendant Baker asserts that, because Plaintiff was disobeying his commands, he was actively resisting.

On the other hand, Plaintiff asserts that, at most, he was demonstrating passive resistance to Officer Baker's commands, likening his behavior to that of the plaintiff in *Eldridge v. City of Warren*, 533 F. App'x 529, 534 (6th Cir. 2013). [Doc. 39 at 21]. In

12

*Eldridge*, police confronted an erratic driver, who they later discovered was in the middle of a diabetic hypoglycemic episode. Officers ordered Plaintiff to exit his vehicle numerous times, but Plaintiff did not move, and repeatedly said "I'm fine, thank you," until officers forcibly removed him from the car and tased him multiple times. *Eldridge*, 533 F. App'x at 530-31. The *Eldridge* Court concluded that the use of the taser in response to Plaintiff's "passive resistance" was excessive. *Id*. at 535. As the Sixth Circuit recently explained in *Kent*, the *Eldridge* Court compared the Plaintiff's noncompliance with that in *Caie v. West Bloomfield Township*, 485 F. App'x 92 (6th Cir. 2012). *Kent*, 810 F.3d at 392. The plaintiff in *Caie* was suicidal and heavily intoxicated, and, while he initially complied with officers' orders, he began behaving erratically and commenting that he should fight the officers so that they would have a reason to kill him. *Id*. (citing *Caie*, 485 F. App'x at 94). In *Eldridge*, the Court distinguished Plaintiff's verbal statements from the direct threats of physical violence seen in *Caie*, noting that Eldridge had "played no role in escalating the aggression." *Id*. at 393 (quoting *Eldridge*, 533 F. App'x at 535) (internal quotation marks omitted).

In *Kent*, the Plaintiff admittedly had yelled at the officers that he "did not have to calm down," accused emergency personnel of "assault[ing] [his] dead father," and responded to warnings with "go ahead and taze me, then." *Id*. The Sixth Circuit concluded that, while such did not resemble the "polite responses" given in *Eldridge*, Kent's statements also did not approach the direct threat of physical harm made by the plaintiff in *Caie*. *Id*. Thus, the Court concluded that Kent's conduct did "not resemble the 'continued

13

resistance and hostility' often present in our activate resistance cases[.]" *Id.* at 393-94 (quoting *Goodwin v. City of Painesville*, 781 F.3d 314, 325-26 (6th Cir. 2015)).

Here, the Court finds a genuine issue of material fact as to whether Plaintiff's behavior, prior to Officer Simmons's arrival, constitutes "active resistance." Although Plaintiff refused to comply with Officer Baker's commands to move in front of the police cruiser or get on the ground, Plaintiff was not aggressive or threatening to Officer Baker, but asked repeatedly for explanation as to why Officer Baker had stopped him. Plaintiff volunteered his identification to Officer Baker numerous times, and informed Officer Baker that he did not have a flashlight, that he was on his way home, and that he had not done anything wrong. The Court finds that Plaintiff's statements to Officer Baker here fall even more in line with the "polite responses" of the plaintiff in *Eldridge* than those made by the plaintiff in *Kent*, both of which the Sixth Circuit concluded did not constitute active resistance. Accordingly, the Court is not convinced that there is no genuine issue of material fact as to whether Plaintiff was actively resisting Officer Baker prior to Officer Simmons' arrival on the scene.

However, in his response, Plaintiff overlooks his own admission that he began flailing his arms when Officers Baker and Simmons grabbed him. The Court can only conclude that Plaintiff was actively resisting when he began flailing his arms, and the Court is required to evaluate the circumstances at the moment that force was employed. *See Bouggess*, 482 F.3d at 889. Because Plaintiff was actively resisting by flailing his arms, Officer Baker may have been justified in using some level of force against Plaintiff. However, as the Court discussed previously, there is no allegation that Plaintiff continued

to flail his arms, or resist the officers in any way, after Officer Baker first punched him. The Court has serious misgivings about finding that Officer Baker's particular use of force, specifically, repeatedly punching Plaintiff in the face, knocking his teeth out, and knocking him to the ground, was an objectively reasonable response to Plaintiff's relatively minor level of resistance.

Ultimately, after evaluating each of the *Graham* factors, the Court must look at the totality of the circumstances, and "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *See Garner*, 471 U.S. at 8. The Court simply cannot conclude, on the record before it, that Officer Baker's use-of-force was not excessive under the circumstances. While the Court gives substantial deference to Officer Baker's split-second decisions in the moment, in light of the totality of the circumstances, the Court finds that there is a genuine issue of material fact as to whether Officer Baker's use of force was objectively reasonable.

### 2. Whether the Right was Clearly Established

As to prong two of the qualified immunity analysis, there are two ways that a Plaintiff can show that a right was clearly established in the law at the time that the alleged violation occurred. *Carico v. Benton, Ireland, and Stovall*, 68 F. App'x 632, 636 (6th Cir. 2003). First, the plaintiff may point to binding precedent from the Supreme Court, the Sixth Circuit, or the district court itself, that directly establishes the conduct in question as a violation of the plaintiff's rights. *Id*. at 636-37 (quoting *Summar v. Bennett*, 157 F.3d 1054, 1058 (6th Cir. 1998)). Second, if no binding precedent is directly on point, the Court

15

may still find that a right was clearly established if it can discern a generally applicable principle from authority whose "specific application to the relevant controversy is so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct was unconstitutional." *Id*. (quoting *Summar*, 157 F.3d at 1058) (internal quotation marks omitted).

In his motion for summary judgment, Defendant Baker insinuates that he is entitled to qualified immunity because Plaintiff has not pointed to a binding case with a sufficiently similar fact pattern to the case at hand. [Doc. 24 at 13-14]. The Court agrees that Plaintiff has not pointed to any case with a sufficiently similar fact pattern to show that Officer Baker's conduct was clearly a violation of Plaintiff's rights. However, Defendant Baker's argument ignores the second method of proving that a right was clearly established – by showing that a generally applicable principle would put a reasonable officer on notice that his conduct was unconstitutional. Plaintiff's argument as to the second prong of the qualified immunity analysis clearly hinges on this theory.

In the Sixth Circuit, "[a] suspect's right to be free from excessive force from arresting officers is clearly established." *Malory v. Whiting*, 489 F. App'x 78, 85 (6th Cir. 2012) (citing *Bletz v. Gribble*, 641 F.3d 743, 756 (6th Cir. 2011)). This remains true even when a suspect has not been handcuffed and is not being perfectly compliant with officers. *Hodge v. Blount County, Tennessee*, No. 3:16-cv-317, 2018 WL 1463390, at *4 (E.D. Tenn. Mar. 23, 2018) (citing *Malory*, 489 F. App'x at 85). Thus, "[t]he Sixth Circuit has held that when a suspect has made only a 'mild showing of resistance' or 'minor stubbornness,' it is excessive for an officer to restrain the suspect by 'tackling, stepping on,

and punching him.'" *Id*. (quoting *Malory*, 489 F. App'x at 85-86). Accordingly, this case, like *Hodge*, turns on whether Plaintiff made more than a "mild showing of resistance" when viewed from the perspective of a reasonable officer at the scene.

As discussed previously, viewing the facts in the light most favorable to Plaintiff, there is a genuine issue of material fact as to the level of resistance that Plaintiff displayed. The Court cannot weigh the disputed facts and determine the truth of the matter at the summary judgment stage. Rather, it is for the jury, at trial, to determine whether Plaintiff displayed more than a "mild showing of resistance" at the time Officer Baker punched him in the face. Accordingly, the Court cannot conclude that Officer Baker is entitled to qualified immunity as a matter of law.

## IV. Conclusion

For the reasons set forth herein, the Court finds that there are genuine issues of material fact present in this matter. Accordingly, Defendant Baker's motion for summary judgment [doc. 23] will be **DENIED.** An appropriate order will follow.

    s/ Thomas W. Phillips
SENIOR UNITED STATES DISTRICT JUDGE